AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

FILED

FEB 2 8 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )    Case No.   **19MJ0857**
Samsung Cellular Telephone )
Model SM-J327T )
IMEI: 352002/09/357745/0 )

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-2, incorporated herein by reference

located in the _____Southern_____ District of _____California_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B-2, incorporated herein by reference

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 841, 846, 952, 960, 963 | Possession with intent to distribute controlled substance; Importation of a Controlled Substance; Conspiracy to commit same |

The application is based on these facts:

See attached Affidavit of Special Agent Jeffrey Rabine

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Jeffrey Rabine, Special Agent HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 2/28/19

City and state: San Diego, CA

_____
Judge's signature

Hon. Michael S. Berg, United States Magistrate Judge
*Printed name and title*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF<br><br>Samsung Cellular Telephone<br>Model SM-J327T<br>IMEI: 352002/09/357745/0 | **AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT** |

I, Jeffrey D. Rabine, a Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a warrant to search the following electronic device, as further described in Attachment A, and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960 and 963, as more particularly described in Attachment B:
   a. Samsung Cellular Telephone
      Model SM-J327T
      IMEI: 352002/09/357745/0
      Black in color
      **(Target Device #1)**

2. Agents seized **Target Devices** on January 6, 2019, from Jessica Nicole URBAN at the time she was arrested at the San Ysidro Port of Entry, San Diego, California, for the importation of approximately 3.66 kilograms (8.04 pounds) of methamphetamine, in violation of Title 21, United States Code, Sections 952 "Importation of a Controlled Substance, 960 "Smuggling of a Controlled Substance, and 963

"Conspiracy". At the time of her arrest, URBAN was a pedestrian crossing the U.S./Mexico border on foot. **Target Devices** are currently in the possession of the Homeland Security Investigations Unit (HSI) located at 2255 Niels Bohr Court, San Diego, California 92154.

3. Based on the information below, there is probable cause to believe that a search of **Target Devices** will produce evidence of the aforementioned crimes, as described in Attachment B.

4. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics smuggling, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. Because this affidavit is made for the limited purpose of obtaining a search warrant for **Target Devices,** it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause.

## EXPERIENCE AND TRAINING

5. I am a Special Agent and currently employed with the United States Department of Homeland Security "(DHS"), Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI"). I have held my current position with HSI since July 2017. I am a graduate of the Criminal Investigator Training Program, and the Immigration and Customs Enforcement Special Agent Training Program at the Federal Law Enforcement Training Center ("FLETC"). During the course of my training at FLETC, I learned fundamentals of how to conduct criminal investigations including, but not limited to, gathering of evidence, preservation of a crime scene, and use of electronic evidence – all in relation to violations of the United States Code.

6. I hold a Bachelor's Degree in Criminal Justice from National University. I hold a Master of Public Administration Degree from American Military University. I am

2

a graduate of the United States Border Patrol Training Academy and I was employed as a United States Border Patrol Agent from March 1997 – April 2002. I was employed as a Federal Air Marshal Service from April 2002 – July 2004. I am a graduate of the San Diego Regional Public Safety Training Institute Police Academy and I was employed as a Police Officer with the San Diego Community College Police Department from July 2002 – July 2017. I have been employed by Homeland Security Investigations as a Criminal Investigator since July 2017. I have attended several advanced training classes including multiple courses on criminal contraband smuggling.

7. Currently, I am assigned to a Contraband Smuggling Group in San Ysidro, California. I primarily investigate violations of the United States Code that stem from the International border between Mexico and the United States, including narcotics smuggling. I have participated in investigating various drug trafficking organizations that are involved in the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California. I have spoken with other agents with extensive experience in narcotics smuggling investigations.

8. I have arrested or participated in the arrest of numerous persons for violations of the Controlled Substances Act. In these cases, I have conducted interviews with the arrested persons and their associates, as well as cooperating individuals and informants. I have conducted surveillance of narcotics smugglers as they conduct their smuggling activity while crossing the border from Mexico into the United States, and while operating inside the United States. I have participated in the execution of search warrants on cellular phones used by narcotics smugglers in furtherance of their smuggling activities. Through these investigative activities, I have gained a working knowledge and insight into the typical activity of narcotics smugglers, and the structure of their narcotics smuggling networks. I have also gained information as to the normal operational habits of persons who make their living as narcotics smugglers.

9. Through the course of my training, investigations, and conversations with

other law enforcement personnel, I am aware that it is a common practice for narcotics smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators in order to further their criminal activities. This is particularly true in cases involving distributional quantities of hard narcotics, such as methamphetamine. Typically, load drivers and/or body carriers smuggling narcotics across the border from Mexico into the United States are in telephonic contact with co-conspirators immediately prior to and following the crossing of the load vehicle/body carrier, at which time they receive instructions on how to cross and where and when to deliver the controlled substances. Narcotics smugglers and their organizations use cellular telephones, in part, because these individuals believe law enforcement is unable to track the originating and destination phone numbers of calls placed to and from cellular telephones.

10. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of narcotics investigations, and the opinions stated below are shared by them. Further, I have personal knowledge of the following facts, or have had them related to me by persons mentioned in this affidavit. This statement is made in support of an application for a warrant to search a cellular telephone that is believed to contain evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

11. Because this affidavit is being submitted for the limited purpose of establishing probable cause to obtain a search warrant, it does not contain all of the information known to federal agents regarding this investigation. Instead, it contains only those facts believed to be necessary to establish probable cause. In addition, information contained in this affidavit is based upon reviews of official reports and records, upon conversations with other Homeland Security Investigations Special Agents, and my personal observations and knowledge. When the contents of documents or statements of others are reported herein, they are reported in substance and in part unless otherwise

indicated.

12. Based upon my training and experience as a Special Agent, and consultations with law enforcement officers experienced in narcotics smuggling investigations, I am also aware that:

    a. Drug smugglers will use cellular telephones because they are mobile and they have instant access to telephone calls, text, web, and voice messages;

    b. Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit;

    c. Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations;

    d. Drug smugglers will use cellular telephones to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo;

    e. Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings; and

    f. The use of cellular telephones by smugglers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

**FACTS SUPPORTING PROBABLE CAUSE**

14. On January 6, 2019, Jessica Nicole URBAN (URBAN) attempted to enter the United States from Mexico through the San Ysidro Pedwest, California, Port of Entry on foot through the pedestrian access point.

5

15. On January 6, 2019 at approximately 10:30 p.m. URBAN, a United States Citizen, presented her California Identification Card (#D1003107) along with her United States birth certificate and applied for entry into the United States at the San Ysidro Port of Entry (POE). URBAN approached Customs and Border Protection Officer (CBPO) Noguez and gave two negative declarations. URBAN stated she was heading to La Mirada, CA. During the inspection CBPO Noguez asked URBAN to turn around to pat her lower back. CBPO Noguez felt a package on URBAN's lower back.

16. On January 6, 2019 at about 10:35 p.m., URBAN was escorted to the secondary inspection area. CBPO Noguez conducted a pat down on URBAN. During the pat down, two long cylindrical packages wrapped in plastic along with a glass pipe and a small personal use baggie containing a substance later field tested positive for methamphetamine, were found in URBAN's bra. Two cylindrical packages were wrapped around her waist as well. The packages were filled with a clear, crunchy substance. URBAN was then moved to a private search room where she was asked to remove her upper and lower clothing garments. URBAN was asked to squat, and a negative internal cavity search was conducted. URBAN was arrested at approximately 10:50 p.m. The substances were field tested positive on Gemini scan 264 for the characteristics of methamphetamine by CBPO Ormazabal, A. The personal use baggie substance was consumed during this testing.

17. During a post-Miranda interview, URBAN said she was recently reacquainted with a childhood friend through Instagram right before Christmas of 2018. URBAN said her friend's name is "LUISIANA" (NFI), but could not recall her last name or Instagram tag. URBAN and LUISIANA messaged each other using their cell phones numerous times on Instagram but did not talk on the phone. URBAN explained that she has two phones because one is broken and only uses WiFi to get to her apps, such as Instagram. The other phone is used to make calls.

18. URBAN used her cell phone to contact LUISIANA on Instagram messenger to discuss and agree to travel to Mexico to smuggle drugs into the United States. URBAN

6

said she knowingly went into Mexico with the intention of being paid to smuggle drugs across the border. URBAN said she did not know what type of drug she was smuggling nor how much but knew it was drugs. She expected to be paid around $300 for the trip.

19. URBAN was arrested and **Target Devices** were seized from URBAN by CBP officers. Based upon my experience investigating narcotics smugglers and the particular investigation in this case, I believe that URBAN likely used **Target Devices** to coordinate the importation of methamphetamine into the United States.

20. Based upon my experience and training, and all the facts and opinions set forth in this Affidavit, there is probable cause to believe that the **Target Devices** contain evidence of violations of Title 21, United States Code, Sections 952, 960 and 963, including communications, records, or data, including but not limited to emails, text messages, other social messaging applications (such as Instagram, WhatsApp or Facebook) photographs, audio files, videos, or location data:

    a. tending to indicate efforts to deliver controlled substances from Mexico to the United States;

    b. tending to identify other facilities, storage devices, or services – such as e-mail addresses, IP addresses, phone numbers – that may contain electronic evidence tending to indicate efforts to deliver controlled substances from Mexico to the United States;

    c. tending to identify co-conspirators, criminal associates, or others involved in smuggling controlled substances from Mexico to the United States;

    d. tending to identify travel to or presence at locations involved in the smuggling of controlled substances from Mexico to the United States, such as stash houses, load houses, or delivery points;

    e. tending to identify the user of, or persons with control over or access to, the target phones; or

    f. tending to place in context, identify the creator or recipient of, or establish

the time of creation or receipt of communications, records, or data above.

21. Based upon my experience and investigation in this case, I believe that URBAN is involved in narcotics smuggling activities. Based upon my experience and training, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that information relevant to the narcotics smuggling activities of URBAN, such as telephone numbers, made and received calls, contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the **Target Devices.**

## METHODOLOGY

22. It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to

8

such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the subject cellular telephones and subject them to analysis. All forensic analysis of the data contained within the telephones and the memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days, absent further application to this court.

## CONCLUSION

25. Based upon my experience, training, and consultation with other law enforcement officers experienced in narcotics smuggling investigations, and all the facts and opinions set forth in this affidavit, I believe there is probable cause to conclude that **Target Devices** were used to facilitate the offense of possession with intent to distribute methamphetamine. **Target Devices** were likely used to facilitate the offense by transmitting and storing data, which constitutes evidence, fruits, and instrumentalities of violations of Title 21, United States Code, Sections 952, 960 and 963.

26. Because **Target Devices** were seized, there is also probable cause to believe that evidence of the illegal activities committed by URBAN, as described in Attachments B-1, continue to exist on the **Target Devices.**

27. Therefore, I respectfully request that the Court issue a warrant authorizing HSI Special Agents and/or other federal and state law enforcement officers specially trained in digital evidence recovery, to search the items described in Attachment A, and seize items listed in Attachment B, using the methodology described above.

9

I swear the foregoing is true and correct to the best of my knowledge and belief.

Jeffrey D. Rabine
Special Agent
Homeland Security Investigations

SUBSCRIBED and SWORN to before me this 28th day of February, 2019.

THE HONORABLE MICHAEL S. BERG
United States Magistrate Judge

10